**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| IN RE:<br><br>BENTOLI, INC.<br><br>    *Reorganized Debtor.* | §<br>§<br>§<br>§<br>§ | CASE NO. 23-10827-SMR<br>Chapter 11 – Subchapter V |
| BENTOLI, INC., WILLIAM A. ROBINSON, SR. AND WILLIAM A. ROBINSON, JR.<br>    *Plaintiffs/Counter-Defendants,*<br><br>v.<br><br>ALEXANDER PALENCIA<br>    *Defendant and Third-Party Plaintiff,*<br><br>v.<br><br>EDWARD STEVE ROBINSON<br>    *Third-Party Defendant.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | ADV. PROC. NO. 23-01024-SMR |

**APPLICATION FOR ENTRY OF AN ORDER APPROVING
THE SETTLEMENT AGREEMENT BETWEEN,
INTER ALIA, THE DEBTOR AND ALEXANDER PALENCIA
<u>PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019</u>**

TO THE HONORABLE SHAD M. ROBINSON,
UNITED STATES BANKRUPTCY JUDGE:

    Bentoli, Inc. ("**Bentoli**" or the "**Reorganized Debtor**") files this *Application for Entry of an Order Approving the Settlement Agreement Between, inter alia, Debtor and Alexander Palencia Pursuant to Federal Rule of Bankruptcy Procedure 9019* (the "**Application**"). In further support of this Application, Bentoli respectfully represents as follows:

Page 1

## SUMMARY OF RELIEF REQUESTED[1]

1. Bentoli and the Guarantors (on one hand) and Palencia (on the other hand) have settled their disputes, subject to the Court's approval. Pursuant to this proposed settlement, the Bentoli Parties have agreed to pay Palencia a total of $600,000 in exchange for which the Note and Guaranties will be cancelled, the Lawsuit[2] will be dismissed along with the State Court Action, which has been consolidated in the underlying adversary proceeding. In addition, the Confidential Information of Bentoli will be returned or destroyed and Palencia will provide written confirmation of the same, Palencia will enter into a Noncompetition Agreement for one year, the Spanish Proceeding will be dismissed, and the Spanish Attachment will be removed.

| Summary of Terms | |
|---|---|
| **Payment by Bentoli and Guarantors to Palencia** | $600,000 |
| **Sources of Payment** | $126,000 from Bentoli<br>$186,750 from Guarantors<br>$287,250 from Loan |
| **Consideration** | Settlement of Lawsuit, State Court Suit, and Spanish Proceeding and satisfaction of the Palencia POC (in the amount of $793,709.23) |
| **Other Salient Terms** | Return or destruction of Confidential Information by Palencia and certification of the same; Non-Competition by Palencia for one year; Notes and Guaranties cancelled; Mutual Releases; Indemnification of Palencia by Bentoli for SBA Loan |
| **Conditions to Effective Date** | Approval of Settlement Agreement by the Court and Implementation of all Exhibits:<br>• Cancellation of the Spanish Attachment<br>• Cancellation of the original Note and original Guaranty fully signed by Palencia<br>• Stipulation dismissing the Lawsuit<br>• Notice of Dismissal and Agreed Order dismissing State Court Action<br>• Notice of Satisfaction of the Palencia POC<br>• Notice of Withdrawal of the Guarantor POCs |

---

[1] This summary is qualified in its entirety by the terms of the Settlement Agreement that are incorporated herein by reference.

[2] As defined below and in the Settlement Agreement.

| | |
|---|---|
| | • Escrow Agreement |
| **Conditions to Payment** | All litigation dismissed in U.S. and Spain, and Spanish Attachment removed |

2. Bentoli seeks entry of an order, substantially in the form attached as **Exhibit 1** (the "**Approval Order**") approving the settlement agreement (the "**Settlement Agreement**"), a true and correct copy of which is attached hereto as **Exhibit 2**, between, *inter alia*, the Reorganized Debtor and Alexander Palencia ("**Palencia**"; and together with the Reorganized Debtor and the other signatories to the Settlement Agreement, the "**Parties**").

### JURISDICTION AND VENUE

3. This Court has jurisdiction to hear and determine this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The bases for the relief requested herein are sections 105(a) and 363 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 9019 of the Local Court Rules of the United States Bankruptcy Court for the Western District of Texas (the "**Local Rules**")

5. The Reorganized Debtor confirms its consent to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

### BACKGROUND

**A.** **General Background**

6. On October 1, 2023 (the "**Petition Date**"), the Debtor filed its voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

7. On October 3, 2023, Michael G. Colvard was appointed as the subchapter V trustee (the "**Subchapter V Trustee**").

8. After the Petition Date, the Debtor operated its business and managed its properties as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No creditors' committee was appointed in this case by the United States Trustee.

9. On December 8, 2023, the Debtor filed its *Second Amended Plan of Reorganization of Debtor and Debtor-in-Possession, Bentoli, Inc.* [Doc. 154] (the "**Plan**"). Because this is a Subchapter V bankruptcy case, there is no disclosure statement.

10. On December 11, 2023, the Court entered its *Findings of Fact, Conclusions of Law, and Order Confirming Debtor's Second Amended Plan of Reorganization* [Doc. 160] (the "**Confirmation Order**"). The case was fully administered shortly thereafter.

11. On December 29, 2023, the Court entered the Final Decree [Doc. 206] closing the case.

12. On April 29, 2025, the Subchapter V Trustee filed his Report of No Distribution [Doc. 220] and was discharged from further duties as trustee.

13. Section 5.03 of the Plan states that the "Debtor will have the power and authority to settle and compromise a Disputed Claim with court approval and compliance with section 1123(b)(3)(A) and Rule 9019 of the Federal Rules of Bankruptcy Procedure."

**B.     Background of the Dispute**

   **i.    *Share Redemption Agreement with Palencia; State Court Suit; Lawsuit***

14. On or about February 22, 2022, Bentoli and Palencia signed (a) a Share Redemption Agreement (the "**SRA**"), by and among Palencia, Bentoli and Seaborn Holdings, Inc. and (b) a Subordinated Promissory Note (the "**Note**"), in the original principal amount of $750,000.00, with Bentoli as Maker and Palencia as Holder, a part of and in association with the SRA.

15. William A. Robinson, Sr. ("**Robinson, Sr.**"), William Robinson, Jr. ("**Robinson, Jr.**"), and Edward Steven Robinson ("**E. Robinson**"; and collectively with Robinson, Sr. and Robinson, Jr., the "**Guarantor Parties**") each signed a Guaranty of Payment dated February 22, 2022, a part of and in association with the SRA (the "**Guaranty**").

16. Disputes arose among Palencia and Bentoli and the Guarantor Parties concerning the performance and enforcement of the Note and the Guaranty. Palencia declared the Note and Guaranty in default, accelerated amounts allegedly owed, and demanded payment from Bentoli and the Guarantor Parties.

17. In November 2022, Palencia filed a civil action styled *Alexander Palencia v. Bentoli, Inc., William A. Robinson, William Robinson, Jr. and Edward Steve Robinson*, Cause No. D-1-GN-22-006655, in the 419th Judicial District Court, Travis County, Texas (the "**State Court Action**"). On July 25, 2023, an *Order Granting Interlocutory Summary Judgment* in favor of Palencia was entered in the State Court Action, awarding Palencia contractual damages in the amount of unpaid principal and contractual interest and late fees in the amount of $793,709.23 as of June 21, 2023, plus $114.04 of interest per day until the entry of a final judgment (the "**Interlocutory Order**").

18. On October 1, 2023, Bentoli filed this bankruptcy case and Adversary No. 23-01024 (the "**Palencia Adversary**") asserting claims against Palencia to avoid the Note and SRA as fraudulent transfers, for declaratory judgment concerning Palencia's alleged equity interest in Bentoli, and to subordinate Palencia's claim in the Bankruptcy Case.

19. Bentoli removed the State Court Action to this Court on November 17, 2023, and it was assigned Adversary No. 24-01035.

20. On December 26, 2023, Bentoli filed an objection to the Palencia POC (as defined below) (the "**Claim Objection**") [Doc. 198].

21. By agreement of the Parties, on December 29, 2023, the Bankruptcy Court signed and entered an order procedurally consolidating the removed State Court Action and the Claim Objection into the Palencia Adversary, such that as of the Effective Date all suits, actions, claims, contentions and matters in controversy between Bentoli, Palencia and the Guarantor Parties are joined in and being litigated in and as part of one action (the "**Lawsuit**").

22. On March 25, 2025, this Court entered its *Order Regarding (1) Alexander Palencia's Motion for Partial Summary Judgment and (2) the Robinsons' Cross-Motion for Partial Summary Judgment and Request for Relief Under Rule 54(b)*, which, among other things, vacated the Interlocutory Order.

23. This matter is not currently set for trial.

**ii.** *Proofs of Claim*

24. Palencia filed Proofs of Claim No. 11 and 17 in the amount of not less than $793,709.23 in this case (the "**Palencia POC**").

25. Robinson, Sr. filed Proof of Claim No. 16 (the "**Robinson Sr. POC**") in the amount of $12,341.90 and asserted a claim for contribution and/or reimbursement against the Debtor to the extent that the Note is not completely avoided and Robinson, Sr. makes payments to Palencia under the Guaranty.

26. Robinson, Jr. filed Proof of Claim No. 18 (the "**Robinson Jr. POC**") in the amount of $21,000.00 as a result of a shareholder loan to the Debtor and asserted a claim for contribution and/or reimbursement against the Debtor to the extent that the Note is not completely avoided and Robinson, Jr. makes payments to Palencia under the Guaranty. The Robinson Sr. POC and the Robinson Jr. POCs are collectively referred to as the "**Guarantor POCs**".

    iii.    *Proceedings in Spain*

27. Following the entry of the Interlocutory Order, Palencia sought to domesticate the judgment in Spain and attached the apartment in Madrid, Spain, owned by Robinson, Sr. and his wife, which is their primary residence and only domicile. On July 21, 2023, Palencia commenced Case No. 1134/2023 before the Court of the First Instance No. 67 of Madrid, Spain (the "**Spanish Proceeding**"), seeking a prejudgment attachment of the residential property of Robinson, Sr. situated in Madrid, Spain (the "**Spanish Property**"), and on December 18, 2023, Palencia obtained the *Mandamiento Anotación de Embargo* (Warning of Seizure) in the Spanish Proceeding (the "**Spanish Attachment**") affecting the Spanish Property. The parties to the Spain Proceeding each retained counsel in Spain to represent their respective interests.

**C.**    **Settlement Negotiations**

28. From time to time and over an extended period of time, the Parties attempted to negotiate a consensual resolution of the various disputes. Following the Court's ruling in March 2025, the settlement negotiations were restarted. The Parties negotiated in good faith to resolve their disputes and now, informed solely by their own judgment and investigation, desire through the execution of the Settlement Agreement, on the terms and for the consideration and subject to the conditions set forth in the Settlement Agreement and the releases, to fully and completely compromise and settle the Lawsuit, the Spanish Proceeding, including the State Court Action and the Palencia POC, and their entire dispute to avoid the time, risk, uncertainty, and expense of further litigation and participation therein, and to buy peace, all without admission of any wrongdoing or liability or admission of any facts or contentions.

## THE SETTLEMENT AGREEMENT

29.     The material terms and conditions of the Settlement Agreement are as follows[3]:

(a)     Following the execution of the Settlement Agreement and the Escrow Agreement (as defined in the Settlement Agreement) by all Parties, Bentoli shall deposit $600,000 (the "**Settlement Payment**") with the Escrow Agent to be held pending disbursement in accordance with the terms of the Settlement Agreement and the Escrow Agreement.

(b)     Prior to or contemporaneously with the occurrence of the Effective Date (as defined below), the Parties shall cause to be filed:

    i.     a joint stipulation of dismissal, with prejudice, of the Lawsuit in the form attached to the Settlement Agreement; and

    ii.     the *Notice of Nonsuit* and *Agreed Motion to Dismiss with Prejudice* in the form attached to the Settlement Agreement.

(c)     As soon as reasonably practicable, but in no event later than five business days after execution of the Settlement Agreement, Palencia will cause his attorneys to take all necessary actions to obtain a dismissal of all claims in the Spanish Proceeding by filing a request for lifting of the Spanish Attachment requesting entry of an order lifting the Spanish Attachment and the release, cancellation, and removal of the Spanish Attachment and any other attachments, writs and, liens, and charges of any kind existing affecting the Spanish Property by reason of the Spanish Proceeding or otherwise. Palencia will file a formal written document with the competent court in Madrid to inform the judge and request the cancellation of the attachment of Robinson, Sr.'s property. Once the Court has issued a ruling, Palencia will present said ruling to the Land Registry to carry out the aforementioned cancellation.

(d)     Bentoli shall use its commercially reasonable best efforts to secure the termination or release of Palencia's guaranty of that certain Small Business Administration Loan (the "**SBA Loan**") to Bentoli, assigned Loan No. 4410177806 and made to Bentoli in the original principal amount of $150,000 through the U.S. Small Business Administration's Economic Injury Disaster Loan program. Furthermore, each of the Bentoli Parties agrees to indemnify, defend, save and hold Palencia harmless from and against any and all liabilities, claims, demands, losses, damages, costs and expenses of any kind or nature whatsoever (including, without limitation, reasonable attorney's fees and costs of Palencia) that Palencia may at any time incur arising out of Palencia's personal guaranty of the SBA Loan. This indemnity shall survive the Effective Date.

---

[3] Capitalized terms used in this section but not otherwise defined in this Motion shall have the meaning ascribed to them in the Settlement Agreement. The summary set forth herein is qualified in its entirety by the Settlement Agreement. To the extent of any inconsistency between this summary and the Settlement Agreement, the Settlement Agreement shall control.

(e)      Upon the Effective Date, each of the Palencia POC and each Guarantor POC shall be deemed satisfied and discharged without the need for any further action by any Party. In furtherance thereof, prior to or contemporaneously with the occurrence of the Effective Date, (a) Palencia shall file a *Notice of Satisfaction of Palencia POC* in the form attached to the Settlement Agreement and (b) Robinson, Sr. and Robinson, Jr. shall each file a *Notice of Withdrawal of Guarantor POC* in the form attached to the Settlement Agreement.

(f)      Prior to or contemporaneously with the occurrence of the Effective Date, Palencia shall execute a Cancellation of the original Note and Cancellation of the original Guaranty in the form attached to the Settlement Agreement.

(g)      The Effective Date is the earliest date by which all of the following events have occurred:

         i.      Bentoli shall have received (a) written confirmation of cancellation of the Spanish Attachment, (b) a Cancellation of the original Note and Cancellation of the original Guaranty fully signed by Palencia;

         ii.      the Parties shall have exchanged executed signature pages to each of (1) the Settlement Agreement, (2) the stipulation dismissing the Lawsuit, (3) the notice of dismissal and agreed order dismissing the State Court Action, (4) the Notice of Satisfaction of the Palencia POC, and (5) the Notice of Withdrawal of the Guarantor POCs, and (6) the Escrow Agreement; and

         iii.      the Bankruptcy Court shall have entered the Approval Order and the Approval Order is effective and not stayed.

(h)      Within one business day after the occurrence of the Effective Date, the Parties shall direct the Escrow Agent to deliver the Settlement Payment to Palencia by wire transfer in immediately available funds.

(i)      Upon the occurrence of the Effective Date, for and in exchange of the transactions described in the Settlement Agreement, and the mutual releases, covenants and other undertakings of the Settlement Agreement, Palencia, for himself and for each Palencia Affiliate Party, does hereby release, acquit and forever discharge the Bentoli Releasees, their respective present and former directors, officers, members, managers employees, affiliates, servants, agents, attorneys, other representatives and each and all their successors and assigns, of and from any Claims that any of them have or may ever have, or that may accrue to any of them in the future based in whole or in any part on any one or more facts existing on or before the Effective Date (the "**Palencia Released Claims**"); provided, however, that the Palencia Released Claims shall not include any claim arising under the Settlement Agreement. Palencia stipulates and agrees that the release and discharge expressed in the Settlement Agreement is a general release and will be interpreted and enforced as a general release and that part of the consideration for this release and discharge is given for the release and discharge of existing and unknown Claims.

> Without in any way limiting the general nature of this release, Palencia expressly waives and assumes the risk of all Claims and rights of action, damages and costs of every kind now existing but which Palencia or any Palencia Affiliate Party does not know of, or suspect exist, and which would materially affect their decision to enter into the Settlement Agreement.

(j) Upon the occurrence of the Effective Date, for and in exchange of the transactions described in the Settlement Agreement, and the mutual releases, covenants and other undertakings of the Settlement Agreement, the Bentoli Parties, and each of them, do hereby release, acquit and forever discharge the Palencia Releasees of and from any Claims that any of them have or may ever have, or that may accrue to any of them in the future based in whole or in any part on any one or more facts existing on or before the Effective Date (the "**Bentoli Released Claims**") ; provided, however, that the Bentoli Released Claims shall not include any claim arising under the Settlement Agreement. Each Bentoli Party stipulates and agrees that the release and discharge expressed in the Settlement Agreement is a general release and will be interpreted and enforced as a general release and that part of the consideration for this release and discharge is given for the release and discharge of existing and unknown Claims. Without in any way limiting the general nature of this release, each Bentoli Party expressly waives and assumes the risk of all Claims and rights of action, damages and costs of every kind now existing but which such Bentoli Party does not know of, or suspect exist, and which would materially affect his or its decision to enter into the Settlement Agreement.

(k) Each Party expressly agrees that such party will pay and bear all costs, expenses, and fees, including attorneys' fees, incurred by such Party in the Lawsuit, the State Court Action and the Spanish Proceeding, and in the performance of the Settlement Agreement incurred by such Party and voluntarily waives any claim for such costs, expenses and fees.

30. Bentoli believes that the Settlement Agreement is in the best interests of the Reorganized Debtor, its creditors, and other parties in interests.

### BASIS FOR RELIEF

31. The Plan at section 5.03 provides that the Reorganized Debtor has the power and authority to settle and compromise any Disputed Claim with court approval and in compliance with section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019.

32. Bankruptcy Rule 9019 empowers a bankruptcy court to approve compromises and settlements if they are "fair and equitable and in the best interest of the estate." *Official Comm. of Unsecured Creditors v. Cajun Elec. Power Coop, Inc. (In re Cajun Elec. Power Coop., Inc.)*, 119

Page 10

F.3d 349, 355 (5th Cir. 1997); *Conn. Gen. Life Ins. Co. v. United Co. Fin. Corp. (In re Foster Mortg. Corp.*), 68 F. 3d 914, 917 (5th Cir. 1995). Further, "[a]pproval of a settlement agreement is a matter within the sound discretion of the bankruptcy court." See *United States v. AWECO, Inc. (In re AWECO, Inc.)*, 725 F.2d 293, 297 (5th Cir. 1984), cert. denied, 469 U.S. 880 (1984).

33. The Fifth Circuit in *Matter of Cajun Elec. Power Co-op., Inc.,* stated that bankruptcy judges must consider the following factors when evaluating a settlement: (1) the probability of success in the litigation, with due consideration for the uncertainty in fact and law, (2) the complexity and likely duration of the litigation and any attendant expense, inconvenience and delay, and (3) all other factors bearing on the wisdom of the compromise. 119 F.3d 349, 356 (5th Cir. 1997); *see also In re Jackson Brewing Co.,* 624 F.2d 599, 602 (5th Cir. 1980). Furthermore, the Fifth Circuit has expanded upon the third factor by adding that courts must consider "[w]hether the compromise serves the paramount interest of creditors with proper deference to their reasonable views" and "[t]he extent to which the settlement is truly the product of arms-length bargaining and not of fraud or collusion." *In re Roqumore,* 393 B.R. 474, 480 (Bankr. S.D. Tex. 2008) (citing to *Cajun Elec. Power Co-op.,* 119 F.3d at 356, and *In re Foster Mortgage Corp.,* 68 F.3d 914, 917 (5th Cir. 1995)).

34. Although the trustee or debtor bears the burden of establishing that the balance of the factors supports a finding that the compromise is fair, equitable, and in the best interest of the estate, the trustee's or debtor's burden is not high. *See In re Derosa-Grund*, 567 B.R. at 785; *In re Roqumore,* 393 B.R. at 480. The trustee need only show that the decision to compromise or settle falls within the range of reasonable litigation alternatives. *See In re Derosa-Grund*, 567 B.R. at 785; *In re Roqumore,* 393 B.R. at 480.

35. Ultimately, the decision to approve a compromise lies within the discretion of the trial judge who need not "conduct a mini-trial to determine the probable outcome of any claims waived in the settlement." *In re Wright*, 545 B.R. at 561 (citing *Cajun Elec. Power Co-op.,* 119 F.3d at 355). Likewise, the Court is not required to conduct a full independent investigation of the merits of the claims being settled. *W.T. Grant Co.*, 699 F.2d at 608, or conduct a full independent investigation. *Drexel Burnham Lambert Group*, 134 B.R. at 496. "[T]he bankruptcy judge does not have to decide the numerous questions of law and fact.... The court need only canvass the settlement to determine whether it is within the accepted range of reasonableness." *Nellis*, 165 B.R. at 123 (internal citations omitted).

36. All of the factors here establish that the parties' settlement is fair, reasonable and in the interest of the estate and its creditors.

37. **Probability of success**. The Debtor asserted in the Lawsuit various claims aimed at avoiding or subordinating Palencia's claims against the estate and for related declaratory relief. Palencia denied Bentoli's claims and asserted claims against the Guarantors under the Guaranty. The Guarantors denied Palencia's claims, asserted claims that Palencia breached and invalidated the Guaranty, and filed contingent claims for Guarantor contribution and indemnity against the Bentoli's estate.

38. After extensive briefing and argument on cross-motions for summary judgment, the Court determined that fact issues requiring trial preclude summary judgment for either Palencia or the Guarantors.

39. Bentoli's claims, and Palencia's proofs of claim have not been considered on summary judgment. Although it is possible, absent this settlement, additional discovery could lead one or the other of the parties to seek a pretrial summary judgment on one or more claims or

Page 12

defenses, some claims and defenses like equitable subordination or Bentoli's declaratory relief claim are inherently factual. This means that a trial likely will be needed to adjudicate disputed facts. The Debtor assesses that a favorable outcome on the facts for either Bentoli or Palencia is a 50-50 proposition.

40. Moreover, the Parties may disagree on the outcome, but the losing party will likely appeal, prolonging the process further and causing the ongoing incurrence of attorney's fees for all Parties. Because this Court has already set aside the Interlocutory Order, the basis for the interlocutory Spanish Attachment is in doubt, and Robinson, Sr. may, absent settlement, be required to litigate its dissolution in a Spanish court before his contingent claim against Bentoli can be resolved.. Once again, that outcome revolves around the resolution of a court proceeding with an uncertain outcome and the possibility of the appeal.

41. Under all the circumstances, the most that can be said of the intertwined claims and litigation is that adjudicating them will be complicated and fact-intensive. Bentoli and the Guarantors assess that in the face of uncertain outcomes on uncertain evidence, resolving the entire case by the proposed settlement for consideration that is less than the face amount of the Note is superior to continued litigation.

42. **Complexity**. The Parties' disputes spawned interrelated litigation in Texas State Court, this Court, and a proceeding in Spain. These matters are related and encompass non-debtor defendants who have contingent claims against each other and the Debtor's estate, depending on the outcome of Palencia's claims under the Guaranty and other claims that involve the Debtor and affect the adjustment of Debtor-creditor relationships. The Debtor's equitable subordination claims, along with the Debtor's contentions that the Note is void or avoidable under both

bankruptcy law and state law concerning distributions from insolvent entities are fact intensive and complex for that reason.

43. Because the Lawsuit and the Spanish Proceeding are pending in different courts under different legal regimes, there is always the risk of inconsistent rulings and the attendant complications. In addition, because of the Spanish Proceeding, the parties involved in that action needed to coordinate with their counterparts in Spain. The factual, procedural, and potentially substantive complexity of these interrelated matters was a significant factor that compelled the parties to seek a negotiated resolution.

44. **Interest of the Creditors**. The compromise fully resolves litigation claims that have been and will continue to be expensive to litigate to an uncertain outcome, make it difficult for the creditors to predict when they would receive distributions, because no funds can be distributed until all claims have been resolved. This settlement results in the withdrawal of claims that exceed $800,000. The Debtor previously settled the SPB Claims (as defined in the Plan). The only other non-insider claim was asserted by the Debtor's former landlord, and the parties are in negotiations to resolve that claim. At that point, the only remaining claims in the estate are the insider claims of Liminality Ventures LLC and John Robinson that can be addressed in a manner that has no impact on any other creditors of the estate.

45. **Other factors weighing in favor of settlement**. The settlement is a result of extensive, arms' length negotiations between the Bentoli Parties and Palencia. Those negotiations were extensively informed by the Parties' development of the case through document discovery and briefing in motions to dismiss and cross motions for summary judgment, none of which resulted in dispositive relief for any party. The Parties' expenses of litigation combined have been considerable and would continue to increase absent this compromise.

46. This settlement allows the Reorganized Debtor to focus solely on the business operations of the company without the distraction and expense of ongoing litigation on two continents.

47. This settlement is a multi-party agreement among sophisticated parties that required the agreements and consideration given by all parties in order to reach this agreement. The Reorganized Debtor evaluated the Settlement Agreement and concluded that the Settlement Agreement was fair and reasonable and in the best interest of the Debtor's estate and the paramount interest of creditors, including Palencia. All of the terms of the Settlement Agreement were negotiated at arms' length.

48. Bentoli requests that, to the extent applicable to the relief requested in this Application, the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As described above, the relief that Bentoli seeks in this Motion is necessary for the efficient administration of its estate. Bentoli respectfully submits that ample cause exists to justify the (a) finding that the notice requirements under Bankruptcy Rule 6004(a) have been satisfied and (b) waiving of the 14-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

49. Accordingly, Bentoli believes that the Settlement Agreement is fair, equitable, and in the best interest of its estate, and requests that it be approved.

**NO PRIOR REQUEST**

50. No prior request for the relief sought in this Application has been made to this or any other court.

**WHEREFORE**, Bentoli respectfully requests that the Court grant the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated: September 2, 2025

        Respectfully submitted,

        **BARRETT DAFFIN FRAPPIER TURNER &ENGEL, LLP**

        */s/ Brian S. Engel*
        Brian S. Engel (SBN 00789279)
        4004 Belt Line Road, Suite 100
        Addison, TX 75001
        (512) 687-2503
        brianen@bdfgroup.com

        ATTORNEY FOR BENTOLI, INC.

## **CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing document has been served electronically upon all parties on receiving the Court's ECF notices, as listed below, on September 2, 2025.

Omar Jesus Alaniz on behalf of Alexander Palencia
oalaniz@reedsmith.com, omar-alaniz-2648@ecf.pacerpro.com;gsaenz@reedsmith.com

Michael G. Colvard on behalf of Michael G. Colvard
mcolvard@mdtlaw.com, mcolvard@ecf.axosfs.com;amartinez@mdtlaw.com

Michael P. Cooley on behalf of Alexander Palencia
mpcooley@reedsmith.com, anixon@reedsmith.com;ahinson@reedsmith.com

Thomas H Curran on behalf of Edward S. Robinson
tcurran@thcalaw.com, tcurran@ecf.courtdrive.com

Brian S. Engel on behalf of Bentoli, Inc.
brianen@bdfgroup.com, tarag@bdfgroup.com

William R Nix, III on behalf of William A. Robinson, Sr.
tnix@krcl.com, ajezisek@krcl.com, tgreenblum@krcl.com

Dylan Tanner Franklin Ross on behalf of Alexander Palencia
dylan.ross@reedsmith.com

Morris D. Weiss on behalf of William A. Robinson, Sr.
mweiss@krcl.com, ajezisek@krcl.com, tgreenblum@krcl.com

Jason Snell on behalf of William ("Bill") Robinson, Jr.
jsnell@snellfirm.com

                                            */s/ Brian S. Engel*
                                            Brian S. Engel